No. 17.—N. B. GOODWYN, plaintiff in error, *vs.* NANCY GOODWYN, defendant in error.

[1.] If the right of action be once barred in the case of *a tort*, no subsequent acknowledgment will take it out of the express language of the Statute of Limitations. In cases of *assumpsit*, an acknowledgment will have this effect, because such acknowledgment then amounts to a new promise.

[2.] But this principle does not apply, where the acknowledgment of the defendant is not proved, for the purpose of showing that a *tort* had been committed, but for the purpose of showing that at a period within the term of years which the Statute constitutes a bar, the possession had not been adverse, because the defendant had acknowledged that the property sued for belonged to the plaintiff.

[3.] If A hold property adversely to B, for several years, and afterwards, in conversation with witnesses, admits that the same is not her property, but belongs to B, as upon the trial where the Statute is pleaded, the Jury may believe, from the statement of these witnesses, that such admissions amounted to an acknowledgment that A was then holding the property for B, and not claiming it in any other right, it is error in the Court to charge the Jury

that " this testimony, though serving to show whether or not the possession was adverse, yet could not be used to excuse the plaintiff from suing within the time prescribed by law, nor to prolong the time within which the plaintiff must sue or be barred, nor does it furnish a fresh starting point for the commencement of the Statute."

Trover, in Coweta Superior Court.   Tried before Judge STARKE, March Term, 1854.

This was an action of Trover for negroes, and plea of the Statute of Limitations.

When the plaintiff had made out his case, the defendant introduced proof that she had denied plaintiff's right, and asserted title in herself in 1843, and had given notice thereof to plaintiff at that time.

The action was commenced in 1849.   Plaintiff, in rebuttal, proved by two witnesses, Béadles and King, that in 1846, or the first of 1847, defendant had admitted, in their hearing, that the property in question was the property of plaintiff.

The Court charged the Jury, that the facts testified to by Beadles and King, could but go to explain the nature of defendant's possession, whether adverse or not: but they could not go to excuse the plaintiff from suing within the time prescribed by law, or to prolong the time in which the plaintiff must sue or be barred: nor could they be used to wipe out or obliterate any previous causes of action which plaintiff may have had: nor did they furnish a fresh beginning point for the commencement of the operation of the Statute; for which purposes said admissions were nullities; they may show whether her possession was adverse or not.   The plaintiff must sue within four years of the time the first cause of action accrued, or be barred.

To which charge of the Court plaintiff excepts.

HAMMOND; WRIGHT, for plaintiff in error.

SIMMS; WARNER, for defendant.

Goodwyn *vs.* Goodwyn.

*By the Court.*—STARNES, J. delivering the opinion.

The Court below instructed the Jury, that "the testimony of the witnesses, Beadles and King, though serving to show whether or not the possession of the defendant was adverse, yet, could not be used to excuse the plaintiff from suing within the time prescribed by law, or to prolong the time within which the plaintiff must sue or be barred: nor can they be used to wipe out or obliterate any previous causes of action, which the plaintiff may have had: nor do they furnish a fresh starting point for the commencement of the Statute ; for these purposes, these facts are nullities ; they may show whether the possession was adverse or not."

We understand the testimony of these witnesses, as being introduced for the purpose of showing that the defendant, in the Court below, Mrs. Goodwyn, at the time to which this evidence relates, (which was sometime in the year 1846 or 1847,) had acknowledged, in effect, that certain of the slaves in controversy, of which the others are offspring and issue, belonged to her son, and for the purpose of relying thereupon, as evidence, that she was not then holding adversely to the plaintiff; and as a consequence, that his claim is not barred by the Statute of Limitations.

Now the Court instructs the Jury, that this testimony was proper evidence to show the first of these things, viz : that the possession of Mrs. Goodwyn was not, at that time, adverse; but he also tells them, that though this were so, yet it could make no difference, as to the Statute of Limitations; that it could not excuse the plaintiff from suing within the time prescribed by law, if the Statute had previously commenced to run against him, nor prolong the time within which the plaintiff must sue or be barred, nor furnish a fresh starting point for the Statute. The plain English of all which simply is, that if the possession of Mrs. Goodwyn had been previously adverse, and the Statute had been running in her favor, these acknowledgments could not stop or suspend it, though they did show that she was not then holding adversely.

[1.] Such was the argument made before us. The elementary principle invoked to sustain it was, that which declares, that "if the right of action be once barred *in torts,* no subsequent acknowledgment will reserve it from the express language of the Statute". That in cases of *assumpsit,* only, will an acknowledgment have such effect. *Tanner vs. Smart* (6 *B. & C.* 274. *Ang. on Lim.* 219.) The reason being, that in cases of assumpsit, the acknowledgment amounts to a new promise; whilst it would be absurd to hold, that in cases of *tort,* the acknowledgment amounted to a new *tort.*

A correct illustration of this principle, is found in the case (which was cited at the bar) of *Oathout vs. Thompson,* (20 *John.* 277.) That was an action for deceit, growing out of the purchase of a negro woman slave, in N. York. The cause of action originated in 1814, and six years or more (the statutory term of limitation in such a case, in that State,) had elapsed before suit commenced. The witness proved that in 1815, he heard the plaintiff charge the defendant " with cheating him in the sale of the wench, and the defendant did not deny it". The Court very properly held, that this acknowledgment did not take the case out of the Statute. It could not amount to a new *tort,* and therefore, could not interfere with the operation of the Statute.

[2.] This is all correct; but it is not the case presented by this record. It was not sought to take the case out of the Statute, by evidence, which proved an acknowledgment that a *tort* had been committed. It was rather offered for the purpose of showing that there had been no *tort* committed; or at all events, that at the time to which it referred, the defendant was not committing a *tort* to the injury of plaintiff, because not holding the property in dispute, adversely to him. In other words, the testimony was offered, not as an acknowledgment that the *tort* had been committed, and thus to take the case out of the Statute, but for the purpose of showing, that at a period within the term of years which the Statute constitutes a bar, the possession of the defendant had not been adverse, because she had acknowledged the property in question was the property of the plain-

tiff. The principle cited, does not, therefore, sustain the deci-sion of the Court.

[3.] As instructed by this charge, the Jury were told, that though this testimony might prove that the possession was not adverse, at the period of which the witnesses testify, still, did the Statute continue to run against the plaintiff. We cannot assent to this doctrine; for we do not understand how the Statute could run, whilst the possession was not adverse. We are very sure, that if A holds property adversely to B, for a time, and the Statute commences to run in his favor, but afterwards, A acknowledges it to be the property of B, or attorns to him for it, to use a term properly applicable to real estate, which is very much the same thing, that the Statute will cease to run, from the time of such acknowledgment.

Let us put a strong case. A takes the slave of B—claims him as his own, and so holds him for several years; but afterwards, goes to B, and says, or puts such declaration in writing over his sign-manual, "I have done wrong in claiming this slave—he is yours—if I continue to hold him, it shall be for you." Can it be doubted that this will effectually extinguish the operation of the Statute of Limitations, even if it had ran for the full time in favor of A? And that if A should subsequently take possession of the slave, in his own name, and again hold him adversely, the Statute would commence to run, necessarily, from the commencement of such subsequent or last adverse possession?

It is true, that there was no such explicit acknowledgment in the case at bar, but if what was said by Mrs. Goodwyn did, in the opinion of the Jury, amount to an acknowledgment at all, that she did not then claim the slaves, but that they were the property of her son, the principle is precisely the same, and the same effect must be given to the acknowledgment.

Judgment reversed.