Nancy Goodwyn, plaintiff in error, vs. Napoleon B. Goodwyn, defendant in error.

[1.] The Acts of Congress of 1790 and 1804, prescribing the mode for making the Acts of the Legislature, records, judicial proceedings and exemplifications of office books, in one State, evidence in another, does not abrogate the common law method of proving these documents, but is merely cumulative.

[2.] The Courts in this State have no right to require the production of an original execution from another State. An examined copy, proven in the mode prescribed by law, is sufficient.

Trover, from Coweta County. Decided by Judge Bull, September Term, 1857.

This was an action of Trover, brought by Napoleon B. Goodwyn against Nancy Goodwyn, seeking to recover certain negroes.

All the facts necessary to a proper understanding of this case, will be found in the opinion pronounced by the Court. The jury found for the plaintiff, and defendant excepted.

FREEMAN & SIMS, for plaintiff in error.

BUCHANAN & W., *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

This is the third time this case has been before this Court; and we regret to see and say, that no trial has been had upon the merits; upon the only issue really involved in the case.

It was first up upon the statute of limitations (16 *Ga. Rep.* 114) and we then held, that upon the proof submitted, the statute did not bar the plaintiff's right to recover. It was again up in 1856 upon sundry points, (20 *Ga. Rep.* 600,) when this Court, at the conclusion of its opinion, took occasion to say : " Here, then, is the hinge upon which this case turns, to-wit : the *bona fides* or *mala fides* of the real or pretended Sheriff's sale; and the further inquiry, of injury or no injury to Napoleon Goodwyn by the acts and acquiescence of his father in the sale and will."

This point has not yet been reached in this case. And until it is, and until it is fully investigated, and all the facts brought out, the result never can be satisfactory to the parties or the country.

This is an action of trover, brought by Napoleon Goodwyn, the son, against Nancy Goodwyn, his mother, for sundry slaves. The plaintiff deduces his title from the will of Mrs. Elizabeth Goodwyn, his grand-mother, and the recovery is resisted upon the ground, that the title to this property was never in the testatrix, and this is the issue between the parties.

The evidence shows that these negroes were once the property of Burwell Goodwyn, the son of Elizabeth, the father of Napoleon and husband of Nancy Goodwyn. Enough is disclosed to show that these slaves were sold under execution at the instance of one Stephen P. Pool, against Burwell Goodwyn, or Etheral Crowder, assignee of Burwell Goodwyn and Stephen P. Pool, (or Etheral Crowder, assignee of Stephen P. Pool against Burwell Goodwyn and said Stephen P. Pool, for the case is thus variously stated in the bill of executions,) in the State of Virginia, in the year 1829 and bid off by one Skepeth M. Oliver. The negroes probably never changed possession, but remained in the possession of Burwell Goodwyn, after, as before the sale. And the object of the testimony should be, to ascertain how the title to this property got into Mrs. Elizabeth Goodwin, so as to enable her to will it to her grand-son? Was anything paid for the negroes? If so, by whom and to whom? Did Oliver bid off the property for himself or for some one else? He is said to be alive; why is his evidence not taken? Wm. M. Gill, the Deputy Sheriff who sold the negroes, is alive, and his testimony has been taken and shown to have been read; but it does not go far enough. It is silent as to the amount of Oliver's bid, the payment of the purchase money, the presence of the negroes at the sale, the delivery of the property, the execution of a title, &c. &c. This ex-official should be carefully and closely examined, touching anything that would cast light upon the character of this sale.

The ground upon which we put the judgment of reversal in this case is the exclusion of the testimony of Thomas D. Goodwyn. He was held to be an incompetent witness, 1st, on the score of interest; and 2d, because it was proposed to prove by him the record from Dinwiddie county, Virginia, as at common law.

We think the Court erred in both views of this evidence.

1st. As to the interest of the witness. Thomas D. Goodwyn, it is true, is the son of Burwell Goodwyn, deceased

But the estate of Burwell Goodwin is not before the Court. It does not appear that he will be gainer or loser by the event of *this suit*. One thing is certain: in a suit by the administrator of Burwell Goodwyn to recover these slaves either from Napoleon or Nancy Goodwyn, the judgment in this case cannot be given in evidence in that. Were such an action pending, it is by no means certain that Thomas D. Goodwyn might not be sworn as a witness. Suppose the estate of Burwell Goodwyn to be insolvent, as it probably once was, if not so at the time of his death, and if not so now, a nominal distributee, might be a witness. At all events, the interest of this witness is too remote and contingent to render him incompetent.

[1.] 2d. As to the right of the defendant to read the record upon common law proof, the authorities, with a single exception, are all that way. The first section of the fourth article of the Constitution of the United States declares that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may, by general laws, prescribe the manner in which such Acts, records and proceedings shall be proved, and the effect thereof." *Cobb*, 1106. And the Acts of Congress of 1790 and 1804, *Cobb* 2756, passed to give effect to the Constitutional provision, merely declares that the Acts of the Legislatures of the several States, their records and judicial proceedings, as well as all records and exemplifications of office books kept in any public office of any State, and authenticated in the mode therein prescribed, shall have such faith and credit given to them in every Court, as they have in the Courts of the State from which they are taken. In other words, a convenient method is prescribed for making these documents evidence. But these Acts do not profess or pretend to make this the only mode of proving these records. They do not abolish the common law rule. 12 *S. and R.* 203; 2 *Yeates* 532; 1 *Haywood* 359; 2 *ib.* 173; 3 *Leigh*, 816, 817.

I have been informed by one of the Judges of the Supreme Court of the United States, since this case was decided, that, owing to the numerous forgeries perpetrated in land titles in California, they had been driven to the common law mode of proof as a protection against fraudulent conveyances.

[2.] We think the Court erred in ruling out the testimony of the Deputy Sheriff, Gill. The original execution, of course, under which the sale took place, could not be removed from the office where it was filed, and to which it belonged, in the State of Georgia.

As to all the quibbling in the Court below over scraps of testimony referring to a sale, &c., we have neither the time nor the taste to examine it. Let the case be tried, and tried finally upon its merits.

Judgment reversed.